## JOHN LIMICY V. THE STATE.

No. 23052. Delivered February 21, 1945.

The opinion states the case.

*Jas. C. Mahan,* of Childress, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction on a charge of committing an abortion. The sentence was four years in the penitentiary.

The count in the indictment upon which conviction was had alleges that John Limicy did "willfully and designedly in and upon Lula May Howard, a women, then and there pregnant, did make an assault, and did then and there unlawfully, and designedly without the consent of the said Lula May Howard, procure

an abortion by then and there striking, kicking, beating and violently using the person of her, the said Lula May Howard, during her pregnancy." It becomes necessary under the charge to show that appellant "designedly" committed the offense, with the intention to force an abortion. The principal question raised by the appeal is on the sufficiency of the evidence to support a finding in accordance with the indictment.

The prosecuting witness, Lula May Howard, a twenty-year-old girl, had lived with appellant since 1940 without being married to him. They had a child born of this illegitimate cohabitation and, if we properly understand the record, she had a miscarriage at a previous time. Some five months before the date of the alleged offense they had discovered that she was again pregnant and this fact was frequently discussed between them. There is, however, no intimation that any trouble had arisen about it or that appellant was displeased because she was pregnant and the fact of her being pregnant was not mentioned or considered in any way at the time of the fight which gave rise to the prosecution. He used no language that would indicate any intention to force an abortion and the jury had only the facts and circumstances involved in the fight upon which they could find him guilty under the court's charge. The prosecutrix describes the "fight" between her and the appellant as beginning on July 8th. He first beat her with a chair. That was during the night time. After she succeeded in getting the chair away from him he grabbed a rub board and broke it over her head. He also broke the broom handle in striking her. This trouble continued for some time and it is described in detail by her as a fight between her and the appellant, involving the ordinary acts and circumstances common to such relationships among the colored people of that strata. They fussed and fought intermittently until Monday, July 10th, following the Saturday night when she describes the fight as beginning. The wounds were principally on her shoulders and head. When the fighting ceased they went up town together and later returned home after which she began to suffer. The appellant had gone and she sent for a negro woman who was known as being "kind of a granny woman." A doctor was called during the night. Whatever he did and the condition which he found is not in the record. The next day Dr. Wilson was called and he testifies in the case that in his opinion the premature birth of the child, after it had died in the mother's womb, was brought about by the injuries which he found inflicted on the prosecutrix.

The record does not disclose the origin of the trouble between the parties nor is it contended that he alone engaged in the con-

flict. It was a fight between them in which she was the loser by considerable odds. She testified in behalf of the State and said "we just had a fight that time and he beat me up." They were fussing over the little boy and she told him she was tired of living the way they were. He then accused her of wanting another nigger, "and that's when the fight started." She further says that nothing was said during all of that time about the unborn baby other than that she remarked the way he was doing he did not want her to have the baby. She does not remember what he said about that.

The facts of this case present an aggravated and brutal attack made upon the woman in a delicate condition. That he has subjected himself to a penalty quite as severe as that inflicted by the jury will be conceded. We can, however, find no evidence supporting the conclusion reached by the jury of an intent to commit an abortion. Intent may be presumed from all of the facts and circumstances of a case, as charged by the court, but the mere fact of the premature birth of the child as a result of the things done, considered with all of the circumstances of this case, will not suffice because of the very nature of the fight between them. He struck her on the head and and the shoulders, and inflicted a slight wound on the leg, all of which were calculated to inflict injuries of a serious nature but none of which were directed in a manner to indicate an intention to bring about the death of the unborn child or to cause a miscarriage. As before stated, it appears to be a negro fight in which both engaged and in which the woman got the worst of the battle. The conflict seems to have arisen as a result of their quarrel in which the prosecutrix took an active part and possibly the lead. If he originated the fight without cause support would be given to the State's contention, at least to some degree. As we find the record we believe it to be insufficient to support the jury's finding.

The judgment of the trial court is reversed and the cause is remanded.